IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
AKRON DIVISION

| | | |
|---|---|---|
| JEWEL SANITARY NAPKINS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. |
| | ) | |
| SPRIGS LIFE, INC. d/b/a | ) | |
| MOTHERHOOD MAGAZINE | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Jewel Sanitary Napkins LLC ("Jewel" or "Plaintiff"), for its Complaint against Sprigs Life, Inc. d/b/a Motherhood Magazine ("Motherhood" or "Defendant") states as follows:

## INTRODUCTION

1. Jewel is a small, minority-owned family business that brought what is arguably the safest, most effective sanitary pad to the marketplace in 2019. The product is revolutionary for several reasons, including that it contains no chemicals at all, and that it contains a layer of graphene, a recently discovered carbon allotrope that fights bacteria and promotes wellness. Graphene is not a metal, does not contain metals, and has not been shown, *ever,* to cause harm when it is applied near or on the body. And it should go without saying, but no sanitary napkin, including those made by Jewel, can deliver any type of vaccine to the woman using it.

2. These sanitary napkins were particularly successful in the Amish market, where women strongly prefer natural, chemical-free products. Sales boomed. Jewel expanded, even hiring the family's three daughters to work there full time.

3. That is, until Summer 2022, when Motherhood Magazine, a publication with substantial Amish readership, published an anonymously written, conspiratorial letter accusing Jewel's products of being unsafe and a vehicle for covertly delivering COVID-19 vaccines to non-consenting women. The letter, titled "A letter for Mom-to-Mom," falsely claims that heavy metals are being found in the graphene strips and that Jewel's products contain the same ingredients as the COVID vaccines. The letter further implores readers to not "give in to the vaccines." The meaning of the letter was clear: Jewel lied to consumers about its products, put dangerous metals in the pads, and used the pads to covertly and illegally administer COVID vaccines to women who don't want to be vaccinated.

4. Sales plummeted, immediately, by almost 50%. Amish women even started contacting their local distributors, urging them to take the product off local shelves. Jewel is now facing financial doom.

5. Motherhood Magazine's publisher *knew* that this letter was false. The scientific ability to administer vaccines through sanitary napkins simply does not exist. Motherhood's publishers (along with the rest of the world) knew that. Motherhood's publishers also knew that Jewel lacks the incentive and the resources to undertake an illegal operation to administer COVID vaccines onto nonconsenting women through sanitary napkins. Such a conspiracy would be too farfetched even for Hollywood.

6. Motherhood's publishers also know their audience – a community of people who have little or no internet access, who give great credibility to the statements and concerns of others in their community, and who turn to trusted periodicals as a primary source of information.

7. Yet Motherhood published the letter anyway, if not with an intent to run Jewel out of business, then without a care in the world that the publication of the letter would have that effect. Jewel requested a retraction of the false statements with a letter.

8. Instead of apologizing or issuing a retraction, Motherhood claimed that their previous issues of Motherhood had included positive content about Jewel and "made [Jewel] money" so Jewel must "take the good with the bad." Motherhood not only refused to retract the ad, but it also threatened to publish the request for retraction, which its publishers threatened would be "extremely disappointing to many of [Jewel's] customers" due to the Amish's moral objection to lawsuits in most cases.

9. Jewel has been left with no choice but to file this Complaint in an effort to keep its business, and its founders' dreams, afloat.

**PARTIES**

10. Plaintiff Jewel is a sanitary napkin and pads corporation duly organized and existing under the laws of Georgia. Jewel operates its headquarters and principal place of business in Georgia with a principal address of 366 McDonough Parkway McDonough, GA 30253 (with other facilities regionally).

11. Upon information and belief, Defendant Sprigs Life, Inc. is a corporation formed under the laws of the State of Ohio with a principal place of business at 6399 State Route 83,

3

Millersburg, Ohio 44654 and does business under the Registered Trade Name "Motherhood Magazine."

## JURISDICTION AND VENUE

11. Motherhood markets, publishes, and sells publications in the State of Ohio, and actively conducts business in the State of Ohio and within this judicial district. Defendant is a corporation formed under the laws of Ohio with a principal place of business in Ohio.

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Jewel and Motherhood are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.

13. Jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1339 and Ohio Civ. R. 3(C).

## FACTUAL BACKGROUND

### The Origins of Jewel and Reign

14. Jewel is a small family company who manufactures and distributes all natural sanitary napkins and pads nationwide under the "REIGN" brand.

15. Jewel was founded in 2019 by husband-and-wife Demond and Qiana Crump.

16. Their journey into the business began years before the company launched. Qiana had suffered through serious reproductive health issues that required a partial hysterectomy. The surgery left her with heavy bleeding and unable to find the right feminine products.

17. Not only was poor absorbency an issue, but typical existing feminine hygiene products contained bleaches and chemicals and increased the risk of infection. Indeed, in scientific

studies, it has been shown that within two hours of use of a traditional sanitary napkin, about 107 different germs per cubic centimeter develop on the surface of the pad, causing "backflow" into the woman's reproductive system and increased risk of infection and other health problems.

18. Demond and Qiana set out to create a new sanitary pad solution for women using only natural materials and the most advanced moisture absorption technology. Demond worked with experts to create a prototype that was far more absorbent than any product on the market. His prototype, and the final product, contained eight layers of non-toxic fabric.

19. While working on the prototype, Demond and Qiana learned about graphene, a carbon allotrope that is stronger than steel yet incredibly lightweight and flexible.

20. This nanomaterial, just one atom thick, was first demonstrated in 2004 by physicists who were awarded the Nobel Prize for their discoveries. It is now emerging as an incredibly useful material for a variety of applications.

21. Demond and Qiana added a layer of graphene into their product to increase its health benefits and bacteria-inhibiting properties.

22. Once the product was ready, the husband-and-wife team launched Jewel Sanitary Napkins LLC ("Jewel"), originally branding the products as "JEWEL," but then settling on "REIGN."

23. Jewel's growth helped turn it into a family business with Demond and Qiana's three daughters now working full time for Jewel. The family celebrated the opening of Jewel's headquarters in June 2021. A photo of the grand opening is shown below.



**The Success and Science Behind Jewel Pads**

24. The graphene strips in Jewel's products have been shown to have multiple health benefits including relief of painful abdominal cramps, balancing the body's PH, elimination of harmful bacteria, aroma benefits, fatigue-fighting properties, metabolism and the immune boosting properties, and more.

25. Scientists and doctors agree that graphene provides these benefits and is safe for use in consumer products like liners or sanitary napkins without any risk of causing miscarriage, preventing pregnancy, inducing electrical currents, or causing cancer.

26. *No* evidence exists from a scientific or medical perspective that graphene sanitary napkins are bad for the user; instead, multiple published and scientifically reviewed papers show the opposite; that graphene is antimicrobial. *See* Exhibit A, Q&A by Anthony Nielsen, Masters in Chemical Engineering; *See also* Exhibit B, Q&A by Patricia Marsh, MD.

27. As women discovered REIGN pads, their experience with the product underscored the science. Women discovered that the products actually changed their lives.

28. Customers reported that their cramping stopped, that they did not need a hysterectomy after all, that their incontinence leakage problems were over, and that the pads helped them stop taking large doses of ibuprofen during menstruation. These anecdotal reports are widely published online.

29. Jewel's success and mission for helping women has resonated throughout the country, resulting in Demond and Qiana's story being featured in articles from Essence, Black Enterprise, Rollingout, Femimagazine, Afrotech, Yahoo Finance, and many more.

30. Jewel's sales also began expanding rapidly, relying heavily on word-of-mouth marketing from satisfied customers.

31. Jewel's word-of-mouth marketing led to several distributors selling to the Amish community.

32. The Amish community is known for avoiding drugs and chemicals, and the community generally prefers natural alternatives when available. They also generally seek health advice from friends, family, and Amish-oriented periodicals like Motherhood.

33. Although the Crumps had not set out to create a product for the Amish, the Amish community quickly came to embrace the REIGN pads, with Amish women recommending them to one another and recommending them via letters to periodicals read by Amish women.

34. The Amish community particularly liked REIGN pads because they are non-toxic and chemical free as well as highly absorbent.

35. By early 2022, 65% of Jewel's sales were to the Amish community.

### Motherhood's Disparaging Publication

36. Motherhood printed an anonymously written letter-to-the editor titled "letter for Mom-to-Mom" in its Summer 2022 edition of Motherhood Magazine. This letter will be referred to herein as the "Letter for Mom-to-Mom."

37. The Letter for Mom-to-Mom begins by providing a "[w]arning about the Reign Sanitary Napkins not being what they were started out to be! Or what the Jewel started out to be."

38. The letter then states that "[h]eavy metals are being found in the graphene strips and ingredients/products as can be found in the covid vaccines [sic]."

39. The letter continues with the statement that "It seems some people are determined to get that vaccine in us. Please! Let's do not intentionally give in to the vaccines if it goes against our standards."

40. The author then warns readers that "When a product changes its name just because there is a catch to it somewhere – always! Do your research. There are other healthy pad options on the market nowadays too."

41. The full text of the letter is published below.

> *A letter for Mom-to-Mom*
>
> Warning about the Reign Sanitary Napkins not being what they were started out to be! Or what the Jewel started out to be. Heavy metals are being found in the graphine strips and ingredients/products as can be found in the covid vaccines! It seems some people are determined to get that vaccine in us. Please! Let's do not intentionally give in to the vaccines if it goes against our standards! As far as the Reign Napkins, I've had a big question mark in my mind about them, ever since I heard about the name change. When a product changes its name just because there is a catch to it somewhere - always! Do your research. And don't despair. There are other healthy pad options on the market nowadays too.

42. The content of the letter would have been immediately recognizable to any newspaper publisher, including the Motherhood, as conspiratorial, false, and defamatory.

43. A five-second Google search would reveal that graphene strips do not contain heavy metals.

44. Common sense also would immediately dictate that it is scientifically impossible to administer to COVID vaccine through a sanitary pad. Indeed, if it were possible to administer vaccinations by such means, such a convenient, needle-free alternative would be such a massive medical achievement that it would be international headline news.

45. Yet Motherhood published the letter without any regard for its truth, or any regard for what impact it would have on Reign's customers and sales.

46. The Letter for Mom-to-Mom was printed and circulated to Motherhood's Amish readers in at least seven states.

47. Because the Amish generally do not subscribe to mainstream news or use the internet, publications like Motherhood Magazine are a major source of news for the Amish. Moreover, letters from other Amish people, such as this one, would be given much credibility and attention by the Amish community.

48. Motherhood, which has a substantial number of Amish readers and which features content geared towards Amish and other Anabaptist women, is well aware of the outsized impact its publication has in the Amish community.

49. After becoming aware of the false statements in Motherhood Magazine, Jewel reached out to Motherhood to demand a retraction of the false statements. Motherhood did not retract the letter or issue any correction.

50. In November 2022, Jewel's reached out to Motherhood with a letter regarding the Letter for Mom-to-Mom seeking retraction. See Exhibit C, November 2022 Letter.

51. On December 22, 2022, Motherhood responded, refusing to publish a retraction.

52. Referring to prior issues in which readers submitted positive letters about Jewel, Motherhood claimed in its refusal that "Motherhood Magazine has made you money," and so therefore Reign "ha[s] to take the good with the bad." See Exhibit D, December 22, 2022 Letter.

**Consequences of the Motherhood Letter**

53. Sales of REIGN pads plummeted after the Motherhood article was published.

54. From September through November of 2022, Jewel's monthly sales were cut almost in half.

55. Demond and Qiana made numerous inquiries with their local distributors. The local distributors, members of the Amish community themselves, had been speaking to the women in the community and receiving letters from them.

56. The distributors learned that many Amish women had read the Motherhood Letter for Mom-to-Mom, feared that the Jewel pads were transmitting the COVID vaccine into their bodies, and radiating toxins from the purported metals. The women ceased use of the pads and told their friends and family to stop using them. Indeed, some of the women even criticized the distributors for continuing to sell the REIGN pads and begged them to stop distributing the products.

57. The Crump family is not litigious and had hopes for any alternative to litigation. However, as a result of the Motherhood letter and Motherhood's steadfast refusal to take any corrective action, this family business is at risk of closing.

58. This lawsuit seeks to compensate Jewel for its losses and send a message to Motherhood that it cannot publish false, conspiracy-laden letters about a small business without consequence.

**FIRST CLAIM FOR RELIEF**
**Ohio Commercial Disparagement Under Ohio R.C. 4165.02(A)(10)**

59. Jewel hereby incorporates and re-alleges the assertions in paragraphs 1 to 58 above as if fully set forth herein.

60. In August 2022, Defendant published "The Letter for Mom-to-Mom" in Motherhood magazine. The letter was captioned as a "warning" and contained false and misleading statements of fact regarding the REIGN products, including, but not limited to, the

11

statements that "[h]eavy metals are being found in the graphene strips" and that "ingredients/products as can be found in the covid vaccines [sic]."

61. The letter, viewed as a whole, is subject to only one reasonable interpretation: REIGN pads contain heavy metals, and that they deliver the COVID vaccine to the women who use them.

62. This statement disparages the quality of the REIGN pads through false representations of fact.

63. The letter was published to Motherhood, which is circulated in seven states and whose readership is comprised of women interested in holistic living and, specifically, includes thousands of women of the Anabaptist faith, including Amish women.

64. The letter published by Defendant tends to and did, in fact, deceive a substantial portion of the intended audience – readers of Motherhood – who, upon information and belief, were amongst the primary consumers of Plaintiff's product

65. The false statements about REIGN pads were likely to influence the purchasing decisions of readers of Motherhood, as product containing heavy metals and components of the COVID vaccine, or the COVID vaccine itself, would be the precise type of product such readers would be opposed to purchasing for health and/or ideological reasons.

66. The publication of the letter has caused irreparable damage to Jewel's sales, and the REIGN brand's goodwill.

67. Motherhood's actions have directly caused a decrease in sales of REIGN products of over $100,000 a month since August 2022.

68. Motherhood has caused and is likely to continue causing substantial injury to Jewel, and Jewel is entitled to injunctive relief as well as recover Motherhood's profits, actual damages, costs, and attorneys' fees under Ohio R.C. 4165.02(A)(10).

**SECOND CLAIM FOR RELIEF**
**Defamation – Libel Per Se**

69. Jewel hereby incorporates and re-alleges the assertions in paragraphs 1 to 68 above as if fully set forth herein.

70. In August 2022, Motherhood published "The Letter for Mom-to-Mom," which contains false statements of fact regarding REIGN pads, including but not limited to the false allegations that "[h]eavy metals are being found in the graphene strips and ingredients/products as can be found in the covid vaccines [sic]."

71. Not only was this statement literally false, but the context of the statement within "The Letter from Mom-to-Mom" further underscores the meaning of the letter and how it would be understood. The letter is a "warning" that the pads are not "what they started out to be," states that people "are determined to get that vaccine in us," and declares that there must be a "catch" because the product underwent a name change. The overall gist of the letter is that Jewel is actively deceiving its customers by failing to disclose dangerous metals in its sanitary napkins and illegally administering COVID vaccines to women without their knowledge.

72. The statements within and gist of the letter is false, as REIGN pads do not include heavy metals, do not contain the COVID vaccine, and are not transmitting the COVID vaccine to unsuspecting and non-consenting consumers.

73. The statements within, and gist of, the letter are not only provably untrue, but defamatory per se, as they impact Jewel in its business and industry, tend to subject Jewel to hatred,

contempt and ridicule, and imputes criminal activity to the company by asserting that Jewel is knowingly administering medical treatments to its consumers without their consent.

74. Defendant published the Letter for Mom-to-Mom with knowledge of the falsity of the statements therein, with reckless disregard as to the truth or falsity of such statements, or, at minimum, with negligence, as any reasonable person should have known that such statements were patently false.

75. Since August 2022, Defendant's actions have directly caused a decrease in sales of REIGN products of over $100,000 a month and seeks to recover for that loss, as well as others.

76. As a direct and proximate result of Defendant's publication of the Letter for Mom-to-Mom, Plaintiff has sustained special damages in the form of lost income, lost profits, lost productivity, lost business opportunities, mitigation and other expenses, in an amount exceeding seventy-five thousand dollars ($75,000) with the exact amount to be proven at trial.

77. As a direct and proximate result of Defendant's publication of the Letter for Mom-to-Mom, Plaintiff has sustained and will continue to sustain, immediate and irreparable harm and injury, including damage to reputation, loss of goodwill, and other non-economic damages.

78. Because Defendant acted willfully, maliciously, wantonly and unlawfully, Plaintiff is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jewel demands a jury trial on all claims so triable and prays for judgment as follows:

(a) The Court enter judgment that Defendant has engaged in commercial disparagement under Ohio R.C. 4165.02(A)(10);

(b) The Court enter judgment that Defendant has engaged in common law libel;

(c) The Court award compensatory damages, disgorgement of Defendant's profits, punitive damages, attorneys' fees, costs, and prejudgment interest;

(d) The Court issue permanent injunctive relief that Defendant is prohibited from publishing the false statements contained in the Letter for Mom-to-Mom in the future or any other content of and concerning Plaintiff which is similar in nature to the false statements made in the Letter for Mom-to-Mom.

(d) On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 23rd day of February, 2023.

        s/ *Andrew C. Stebbins*
        Amanda G. Hyland
        *(pro hac vice forthcoming)*
        ahyland@taylorenglish.com
        Georgia Bar No. 325115
        Falkner N. Werkhaven
        *(pro hac vice forthcoming)*
        Fwerkhaven@taylorenglish.com
        Georgia Bar No. 835676

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle – Suite 200
Atlanta, Georgia 30339
Telephone: (770) 434-6868
Facsimile: (404) 434-7376

        Andrew C. Stebbins (0086387)
        Christina N. Williams (0093726)
        astebbins@bdblaw.com

Buckingham, Doolittle & Burroughs, LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH 44114
Telephone: (216) 736-4234
Facsimile: (216) 736-4234

*Attorneys for Plaintiff*
*Jewel Sanitary Napkins, LLC*