UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEWEL SANITARY NAPKINS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SPRIGS LIFE INC. d/b/a MOTHERHOOD MAGAZINE, <br><br> Defendant. | Case No. 5:23-cv-00376 <br><br> Judge J. Philip Calabrese <br><br> Magistrate Judge Thomas M. Parker |

# OPINION AND ORDER

In this defamation lawsuit, Plaintiff Jewel Sanitary Napkins moves for partial judgment on the pleadings on two affirmative defenses (the eighth and eleventh) that Defendant Motherhood Magazine pleads. (ECF No. 19.) Generally, these defenses relate to whether Defendant caused the special damages Plaintiff alleges it sustained and apportionment of any damages between Defendant and another defendant in similar litigation pending in the Western District of Wisconsin. (ECF No. 9; *see also* ECF No. 18, ¶ 1, PageID #127.) For the reasons that follow, the Court **DENIES** Plaintiff's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff bases its claims on the following facts pleaded in the complaint. At this stage of the proceedings, and in the present procedural posture, the Court construes the facts in the light most favorable to Defendant.

Jewel is a small business producing the "safest, most effective" sanitary napkins and pads. (ECF No. 1, ¶ 1, PageID #1.) Jewel's pads do not contain chemicals, but they have a layer of graphene to help "fight[] bacteria and promote[] wellness." (*Id.*) These products were popular in the Amish community, where women prefer natural, chemical-free products. (*Id.*, ¶ 2, PageID #2.) Jewel markets its sanitary napkins and pads under the "REIGN" brand. (*Id.*, ¶ 14, PageID #4.)

Motherhood Magazine is a publication with "substantial Amish readership." (*Id.*, ¶ 3, PageID #2.) In the summer of 2022, during the pandemic when public health authorities encouraged vaccination against Covid-19 and some resisted those efforts, Motherhood Magazine published an anonymous letter about Jewel's products:

> A letter for Mom-to-Mom
>
> Warning about the Reign Sanitary Napkins not being what they were started out to be! Or what the Jewel started out to be. Heavy metals are being found in the graphine strips and ingredients/products as can be found in the covid vaccines! It seems some people are determined to get that vaccine in us. Please! Let's do not intentionally give in to the vaccines if it goes against our standards! As far as the Reign Napkins, I've had a big question mark in my mind about them, ever since I heard about the name change. When a product changes its name just because there is a catch to it somewhere - always! Do your research. And don't despair. There are other healthy pad options on the market nowadays too.

(*Id.*, ¶ 41, PageID #9). Jewel filed suit on February 23, 2023. (ECF No. 1.)

2

Jewel alleges that this letter accuses the company of lying about its products, putting dangerous metals in the pads, and using them covertly and illegally to administer Covid vaccines to women without their consent. (*Id.*, ¶ 3, PageID #1.) Further, Jewel alleges that Motherhood Magazine knew the letter was false. (*Id.*, ¶ 5, PageID #2.) As a result of the letter's accusations, Jewel claims that its "[s]ales plummeted, immediately, by almost 50%" and that Amish women requested that their local distributors stop selling Jewel's products. (*Id.*, ¶ 2, PageID #2.) Since August 2022, Jewel alleges that Motherhood Magazine's actions "directly caused a decrease in sales of REIGN products of just over $100,000 a month." (*Id.*, ¶ 75, PageID #14.) Also, it alleges special damages consisting of lost profits and other items in an unspecified amount exceeding $75,000. (*Id.*, ¶ 76.)

Around the same time Motherhood Magazine published the anonymous letter, a Wisconsin-based publication, Busy Beaver, published a similar letter about Jewel. Jewel is simultaneously litigating a defamation case against Busy Beaver in the Western District of Wisconsin. *Jewel Sanitary Napkins, LLC v. Busy Beaver Publ'ns, LLC*, No. 3:23-cv-00126 (W.D. Wis.).

Plaintiff argues that the Motherhood Magazine letter constitutes defamation *per se*. A plaintiff who adequately pleads or proves defamation *per se* need not prove causation because Ohio law presumes damages. Plaintiff argues that Ohio law dictates that intentional torts, like defamation, are subject only to joint and several liability—and any intentional tortfeasor cannot apportion their liability among other

3

intentional tortfeasors. Therefore, Defendant cannot assert an affirmative defense to mitigate its liability.

Defendant counters that it states a valid defense to defamation because the affirmative defense would negate causation, an element of Plaintiff's defamation claim. Defendant contends that the Busy Beaver case is a superseding cause of Plaintiff's alleged injury and mitigates or prevents any recovery. Defendant also points to two Ohio statutes to support its position.

## ANALYSIS

Although the Sixth Circuit has not addressed whether the same pleading standard under Rule 8, requiring a showing of a plausible claim to relief, applies to affirmative defenses, *Depositors Ins. Co. v. Estate of Ryan*, 637 F. App'x 864, 869 (6th Cir. 2016), the Court has held that it does not, *see Greenberger v. Bober, Markey, Fedorovich & Co.*, 343 F.R.D. 375, 377–78 (N.D. Ohio 2023). Therefore, an affirmative defense "may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006).

"A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). "The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D.

4

Ohio 2003). Rule 12(c) provides that once "the pleadings are closed," a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

While "under modern practice [the various Rule 12 motions] have to some extent become interchangeable, a Rule 12(c) motion should be contrasted with a motion to strike under Rule 12(f)." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1369 (3d ed. Feb. 2024). "If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than Rule 12(c) because the latter leads to entry of a judgment." *Id.*, § 1369; Fed. R. Civ. Pro. 12(f).

Here, because Plaintiff seeks to invalidate only two of Defendant's affirmative defenses and does not seek a judgment regarding the merits of any of its claims (despite spending considerable time briefing the defamation *per se* claim), Plaintiff's motion is properly treated as a motion to strike under Rule 12(f). *See Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2015 WL 1245861, at *2–3 (E.D. Mich. Mar. 18, 2015) (construing plaintiff's Rule 12(c) motion as a motion to strike because the plaintiff sought to invalidate one of the defendant's affirmative defenses).

Under Rule 12(f), a court may "order any redundant, immaterial, impertinent, or scandalous matter stricken from any pleading, motion, or other paper." Fed R. Civ. P. 12(f). Motions to strike insufficient defenses are often a dilatory tactic and disfavored by the Court. Moreover, because striking any part of a pleading is a drastic remedy, *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822–23 (6th Cir. 1953), courts should strike a defense only where it raises no factual issues

5

and is "so legally insufficient that it is beyond cavil that defendants could not prevail on [it]." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (citation omitted); *United States Sec. & Exch. Comm'n v. Thorn*, No. 2:01-cv-290, 2002 WL 31412440, at *2 (S.D. Ohio Sept. 30, 2002) (recognizing that, to strike an affirmative defense, it must as a matter of law be so deficient that the defense would not succeed under any circumstances).

Defendant invites the Court to consider the Busy Beaver litigation as a matter outside the pleadings in ruling on the sufficiency of its affirmative defenses. (ECF No. 26, PageID #169.) Usually, courts do not consider matters outside the pleadings when ruling on a motion to strike. *Pretty Prods.*, 780 F. Supp. at 1498. But the Court may take judicial notice of public records, including other lawsuits. *See* Fed. R. Evid. 201(b); *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999). The existence of the Busy Beaver suit and the potential overlap between the liability and damages theory at issue there are central to Defendant's opposition. Therefore, the Court considers the Busy Beaver litigation. *See Hardin v. Reliance Tr. Co.*, No. 1:04-cv-2079, 2006 WL 2850457, at *2–*3 (N.D. Ohio Sept. 29, 2006) (taking judicial notice of other lawsuits in ruling on a plaintiff's motion to strike).

In the present procedural posture, the primary task for the Court is to determine whether, as a matter of law, Defendant can assert its apportionment defense against Plaintiff's claim of defamation *per se*.

I.   **Defamation Under Ohio Law**

To maintain a defamation claim under Ohio law, a plaintiff must plead and ultimately prove:  (1) a false and defamatory statement; (2) about Plaintiff; (3) was

published without privilege to a third party; (4) with fault of at least negligence by the defendant; (5) that was either defamatory *per se* or caused special harm. *Gosden v. Louis*, 116 Ohio App.3 d 195, 206, 687 N.E.2d 481, 488 (Ohio Ct. App. 1996). Whether allegedly defamatory statements are actionable is a question of law for the Court. *Becker v. Toulmin*, 165 Ohio St. 549, 556, 138 N.E.2d 391, 396–97 (1956).

Generally, Ohio courts consider statements defamatory *per se* if the statement tends to injure the plaintiff in its trade, profession, or occupation. *Gilson v. American Inst. of Alt. Med.*, 2016-Ohio-1324, 62 N.E.3d 754, ¶ 38 (Ohio Ct. App.). Also, the statement must be actionable on its face without regard to the listener's interpretation. *Gosden*, 687 N.E.2d at 488. If a statement is not defamatory *per se*, it becomes defamatory *per quod* "through interpretation, innuendo, or consideration of extrinsic evidence." *Dudee v. Philpot*, 2019-Ohio-3939, 133 N.E.3d 590, ¶ 68 (Ohio Ct. App.).

### I.A. General and Special Damages for Defamation

Where a plaintiff pleads defamation *per se*, "some damages are presumed, and the plaintiff is not required to prove special damages." *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 2009-Ohio-2612, 916 N.E.2d 484, ¶ 9 (Ohio Ct. App.) (citing *Shoemaker v. Community Action Org. of Scioto Cnty., Inc.*, 2007-Ohio-3708, 2007 WL 2070365, ¶ 13 (Ohio Ct. App. 2007)). Presumed or general damages "cover loss of reputation, shame, mortification, injury to the feelings and the like." *Federal Aviation Admin. v. Cooper*, 566 U.S. 284, 295–96 (2012); *see also* Restatement (Second) of Torts § 621.

In contrast, if a statement is defamatory *per quod*, the plaintiff must plead and prove special damages. *Northeast Ohio Elite Gymnastics*, 2009-Ohio-2612, at ¶ 9. Special damages compensate beyond a plaintiff's "stained reputation" to cover direct financial losses, *McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1315 (S.D. Ohio 2001) (citation omitted), resulting from the conduct of another person besides the defamer or the one defamed, *Bigelow v. Brumley*, 138 Ohio St. 574, 594, 37 N.E.2d 584, 594 (1974). Ohio law does not presume special damages, and a plaintiff must demonstrate a nexus between the damages and the defamatory statement. *Kluss v. Alcan Aluminum Corp.*, 106 Ohio App. 3d 528, 537, 666 N.E.2d 603, 609 (Ohio Ct. App. 1995); Restatement (Second) of Torts § 622A ("[T]here can be no recovery of special harm unless the defamation is a legal cause of it.").

At bottom, a plaintiff may maintain an action for defamation *per se* without pleading or proving special damages. *Becker*, 138 N.E.2d at 395. If a plaintiff pleads special damages for defamation *per se*, however, the plaintiff must show that the defamatory statement was the "legal cause" of the harm. *Northeast Ohio Elite Gymnastics*, 2009-Ohio-2612, at ¶ 9; *see also* Restatement (Second) of Torts, § 622A (noting that the requirements for proving "legal causation" are "applicable to recovery of damages for special harm when the defamation is actionable *per se*").

### I.B.  Jewel's Claimed Damages

Against this legal backdrop, Plaintiff conflates the general damages to which it would be presumptively entitled if it can establish a *prima facie* case of defamation *per se* and the special damages it must prove based on the allegations it makes in the complaint. As a general matter, Plaintiff is correct that, if the Motherhood Magazine

8

letter constitutes defamation *per se*, Plaintiff would have no obligation to plead or prove special damages—because Ohio law presumes general damages for reputational injury. Nor would Plaintiff have to prove causation. In this scenario, because Plaintiff need not prove causation, the conduct of third-party Busy Beaver is likely irrelevant to assessing any harm to Plaintiff's reputation—and Defendant does not claim otherwise. (*See* ECF No. 26, PageID #170–73.) "Reputation, however, is not proved by showing that others in the past have slandered or libeled the plaintiff in the same manner as defendants." *Guccione v. Hustler Magazine, Inc.*, No. 80AP-375, 1981 WL 3516, at *9 (Ohio Ct. App. 1981) (citing *Fowler v. Chichester*, 26 Ohio St. 9 (1874)); *see also McIntosh v. Slick*, 2007-Ohio-3672, 2007 WL 2060017, ¶¶ 89–90 & 195 (affirming the trial court's decision not to reduce a jury's award of *general damages* to reflect a settlement the plaintiff recovered in a related lawsuit because the related suit concerned "separate and distinct" defamatory statements made by a third-party).

Plaintiff argues that the Court cannot read its prayer for relief to require special damages. (ECF No. 27, PageID #187.) But based on a plain reading of the complaint, Plaintiff goes beyond the pleading required for a defamation *per se* claim and specifically pleads that it is entitled to "special damages" in the form of "lost income, lost profits, and lost business opportunities" where there was a decrease in product sales of over $100,000 a month after Mother Magazine published the letter at issue. (ECF No. 1, ¶¶ 75 & 76, PageID #14.) Again, Plaintiff can maintain this defamation action without proving special damages, *Becker*, 138 N.E.2d at 395, but

9

because Plaintiff alleges special damages, Plaintiff must prove causation of those damages. Restatement (Second) of Torts, § 622A.

Under Ohio law, the legal or "proximate cause of an event is that which is a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *NOCO Co. v. OJ Commerce, LLC*, 35 F.4th 475, 482–83 (6th Cir. 2022) (quoting *Aiken v. Indus. Comm'n*, 143 Ohio St. 113, 117, 53 N.E.2d 1018, 1020 (1944)). A new independent or intervening cause breaks the causal chain. *Id.* More generally, "separate wrongs done by independent agents cannot be joined together to increase the responsibility of one of the wrongdoers . . . . [especially] *where some reasonable means of apportioning the damages is evident.*" *Pang v. Minch*, 53 Ohio St. 3d 186, 559 N.E.2d 1313, 1322 (1990) (quotation omitted).

As Defendant argues, there is a potentially reasonable basis to apportion Plaintiff's claim for special damages. Theoretically, there are two separate markets purchasing Plaintiff's products: one market subscribing to Motherhood Magazine in Ohio and one subscribing to the Busy Beaver publication in Wisconsin. As Plaintiff alleges, customers in each market might have read their respective publications and stopped purchasing Plaintiff's products because of the claims made in the letters. And those markets might be mutually exclusive or have little overlap, meaning no Jewel customer subscribed to both to Motherhood Magazine and the Busy Beaver publication. If those markets are largely separate, then both Defendant and Busy Beaver could mitigate their respective liability for Plaintiff's total economic loss

10

(Plaintiff's special damages) according to the profits lost in each market. Any such determination depends on discovery and goes far beyond the pleadings.

For purposes of special damages, while Plaintiff may have suffered a single harm—a loss in profits because of Motherhood Magazine's and Busy Beaver's publication of the letters—that harm might very well be capable of apportionment. *See* Restatement (Second) of Torts, §§ 443A & 881. Plaintiff has a host of procedural tools at its disposal to clarify or amend the pleading if it did not intend to claim special damages. But because Plaintiff did make allegations that, if proved, would entitle it to an award of special damages, Plaintiff's ability to prove causation (and subsequently recover special damages) is subject to an apportionment defense, which Defendant might or might not be able to prove.

### I.C. Section of 2739.02 of the Ohio Revised Code

Nor does Section 2739.02 of the Ohio Revised Code change this result. That statute, titled "Defenses in actions for libel or slander," provides, in relevant part that "[i]n all such actions any mitigating circumstances may be proved to reduce damages." Ohio Rev. Code § 2739.02; *see also Gosden*, 687 N.E.2d at 491, 493 (considering the admissibility of a plaintiff's prior convictions for mitigation purposes in a suit involving defamation *per se*).

Plaintiff argues that Defendant's reliance on Section 2739.02 is misplaced because "mitigation of damages typically involves a plaintiff's reputation stemming from its own conduct." (ECF No. 27, PageID #189.) While Plaintiff might be right as a general proposition that third-party conduct has little if any relevance to mitigation, the cases on which it relies for this proposition involve general—not special—

11

damages. *See Sun Printing & Publ'g Ass'n v. Schneck*, 98 F. 925, 927–28 (2d. Cir. 1900); *Gray v. Brookyln Union Publ'g Co.*, 35 A.D. 286, 287–89 (N.Y. App. 1898). Moreover, Plaintiff cites no authority holding that third-party conduct cannot mitigate a Plaintiff's claim for *special damages* under Section 2739.02. At least at the pleading stage and without discovery, Section 2739.02 does not foreclose an apportionment defense.

## II. Apportionment of Tort Liability under Ohio Law

In addition, Ohio law imposes joint and several liability on joint tortfeasors. Section 2307.22 allows joint and several liability only for a tortfeasor more than 50% responsible for a plaintiff's economic damages. Ohio Revised Code § 2307.22(A)(1). If a tortfeasor is responsible for 50% or less of damages, it is liable only for its proportional share of the plaintiff's economic loss. *Id.* § 2307.22(A)(2). But for an intentional tort, joint and several liability applies regardless of the percentage of any tortfeasor's responsibility for "the same injury or loss." *Id.* § 2307.22(A)(3); *see also Gurry v. C.P.*, 2012-Ohio-2640, 972 N.E.2d 154, ¶¶ 14–15 (Ohio Ct. App.).

Based on this statute, Plaintiff argues that Defendant cannot apportion damages. Because defamation is an intentional tort, Plaintiff maintains that Defendant can only be held jointly and severally liable. But whether defamation is an intentional tort under Ohio law remains an open question—especially since negligence can suffice as the requisite degree of fault for a *prima facie* case of defamation *per se*. *See, e.g.*, *Price v. Austintown Local Sch. Dist. Bd. of Educ.*, 2008-Ohio-4514, 897 N.E.2d 700, ¶ 23–25 (recognizing that defamation can be intentional or negligent depending on the circumstances); *Dordea v. Freleng*, 2023-Ohio-1408,

12

213 N.E.3d 773, ¶ 13 (Ohio Ct. App.) (same); *Mayer v. Bodnar*, 2022-Ohio-4705, 204 N.E.3d 731, ¶ 51 (Ohio Ct. App.) (same). Further, if an intentional tort, Plaintiff still must prove that it suffered "the same injury or loss" under Section 2307.22(A)(3). Therefore, at this stage of the proceedings, the Court is unable to determine whether or how any liability might be apportioned between Motherhood Magazine and Busy Beaver.

## CONCLUSION

For these reasons, Defendant's apportionment defense is not so "legally insufficient that it is beyond cavil" that Defendant could succeed on it after the parties develop a more robust factual record. *Pretty Prods.*, 780 F. Supp. at 1498. Therefore, the Court **DENIES** Plaintiff's motion. In short, this issue is best determined after further factual development and an opportunity to resolve Plaintiff's defamation claim on the merits. 5C Wright & Miller, *Federal Practice and Procedure* § 1381.

**SO ORDERED.**

Dated: March 4, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio